IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH-CENTRAL DIVISION

| | |
|---|---|
| FRANCES M. FLOOD,<br><br>  Plaintiff,<br><br>v.<br><br>CLEARONE COMMUNICATIONS, INC., a Utah Corporation,<br><br>  Defendant. | **ORDER GRANTING PRELIMINARY INJUNCTIVE RELIEF**<br><br>Case No. 2:08-CV-631 |

*[FILED U.S. DISTRICT COURT 2009 JAN 12 P 2: 19 DISTRICT OF UTAH BY: DEPUTY CLERK]*

Before the Court are Plaintiff's Motion for Summary Judgment and Defendant's Motion to Dismiss or alternatively for Summary Judgment. The Court heard oral argument on November 12, 2008. Ms. Flood was represented by Rodney Parker, Richard Van Wagoner, and Samuel Harkness. ClearOne Communications was represented by Brian Cousin and James Magelby. The Court took the matters under advisement. Since that time, the Court has held several status conferences in an effort to encourage the parties to settle. Due to the time constraints and the equities involved, the Court will not issue a final ruling on the above motions at the present time. However, to preserve the rights of the parties involved, and in particular to ensure that Ms. Flood's constitutional and trial rights are protected, the Court grants a preliminary injunction as follows.

## BACKGROUND

Frances Flood is a past employee and officer of the defendant, ClearOne Communications, Inc.. On January 15, 2003, the United States Securities and Exchange

Commission commenced a civil suit against ClearOne, Ms. Flood, and Susie Strohm, another ClearOne employee, alleging violations of the federal securities laws. The suit led to additional proceedings, including a criminal indictment against Ms. Flood and Ms. Strohm. Ms. Flood and Ms. Strohm sought from ClearOne indemnification and advancement of attorneys' fees and costs incurred by them in the SEC action and all other related proceedings.

On December 5, 2003, Ms. Flood and ClearOne entered into an Employment Separation Agreement. Pursuant to the agreement, Ms. Flood agreed to resign from her position as ClearOne's CEO and Chairman of the Board of Directors. Additionally, Ms. Flood forfeited numerous stock options and transferred shares of ClearOne's common stock back to the Company. In exchange for these and other actions, the Company paid Ms. Flood $350,000 and agreed to indemnify Ms. Flood for liability, legal fees, and costs.

The indemnification provision provides that ClearOne will indemnify Ms. Flood for "any liability and all reasonable attorneys' fees and costs . . . whether incurred before or after the effective date of [the] agreement." Employment Separation Agreement at ¶ 8. ClearOne agreed it would "continue to pay for the reasonable defense costs incurred by Flood in defending matters or future matters, if any, which may arise from or relate to her tenure as an officer or director of ClearOne." *Id.* ClearOne's indemnification obligations were contingent on Ms. Flood's duty to cooperate with ClearOne in the ongoing investigations as well as limitations imposed by Utah Code Ann. § 16-10a-902 and ClearOne's articles of incorporation and bylaws. *Id.*

Utah Code § 16-10a-902 provides that a corporation may indemnify a director only if (1) the director's "conduct was in good faith," (2) the director's conduct was reasonably believed to be "in the corporation's best interests," and (3) the director "had no reasonable cause to believe

his conduct was unlawful." Utah Code Ann. § 16-10a-902(1). ClearOne's bylaws also condition indemnification "on a conclusion that the expenses are reasonable, the corporation has the financial ability to make the payment, and the financial resources of the corporation should be devoted to this use rather than some other use by the corporation." ClearOne's BYLAWS § 5.1(a)(2).

Ms. Flood and Ms. Strohm were indicted by a federal grand jury in this district on July 25, 2007.

Before Ms. Flood and ClearOne executed the Employment Separation Agreement, Ms. Flood retained current counsel–Max Wheeler and the law firm of Snow, Christensen & Martineau–to represent her in all matters relating to the SEC investigation and related proceedings. As soon as the agreement was signed, ClearOne paid Mr. Wheeler and his firm's legal fees that were incurred previously, and continued to pay all fees and costs as they became due.

Not only did ClearOne establish a pattern of advancing legal fees, but additionally the Company made various statements concerning its obligation to advance fees for Ms. Flood's legal defense and to indemnify her. For example, on April 25, 2008, Raymond Etcehverry, counsel for ClearOne, provided a letter to Ms. Flood's counsel stating "[t]he Company has and will continue to meet its obligation to advance reasonable and necessary defense costs." Plaintiff's Memorandum in Support, Ex. P. On July 27, 2007, ClearOne stated in a public filing that "the Company has a direct financial obligation to indemnify each former officer for any liability and for all reasonable attorney's fees and costs incurred in defending against the charges brought by the United States Attorney." *Id.* Ex. B. On September 30, 2007, the Company made a similar statement in another public filing and also estimated the Company would be liable for

approximately $1.8 million "through trial, [for] the advancement of funds related to the indemnification agreements," of Ms. Flood and Ms. Strohm. *Id.* Ex. C. The Company reiterated these statements in multiple press releases, *id.* Ex. D, E, & F, although the estimates for ClearOne's total liability increased steadily until ClearOne stated that it had "a $3.3 million accrual for a contingent liability associated with the advancement of funds related to indemnification agreements with two former officers, whose trial has been scheduled for October 2008." *Id.* Ex. G.

Beginning with ClearOne's refusal to pay for a focus group which Ms. Flood's counsel thought necessary for her defense, and culminating in ClearOne's refusal to pay any invoices following a partial payment of an April 2008 invoice, the Company has ceased advancing funds. The Company's primary claim is that the fees and costs are unreasonable. In response, Ms. Flood's attorneys in the criminal case claim all of their actions and fees are reasonable, and that they will need to withdraw unless their fees are paid. They point out that in any event, they are not ethically permitted to advance costs, and that Ms. Flood is financially unable to do so, or to pay their fees on her own. As a consequence of their impasse, Ms. Flood filed the present lawsuit in the midst of her ongoing criminal case, alleging various causes of action against ClearOne, including a cause of action for breach of contract and requesting remedies including a preliminary injunction. After a motion hearing on September 19, 2008, the parties agreed to file cross motions for summary judgment. Oral argument was heard on these motions on November 12, 2008.

Recognizing that Ms. Flood is facing a trial date in her criminal case of February 2, 2009, and the fact that any ruling by this Court may be delayed by appellate proceedings, the Court strongly encouraged the parties to resolve their disputes through settlement negotiations. At a

status conference on January 8, 2009, the Court informed the parties that it was considering issuing a preliminary injunction if the parties could not reach a mutually agreeable settlement. Unfortunately, settlement has not occurred. In order to guarantee Ms. Flood's right to a speedy trial, the right to effective assistance of counsel and continuity of counsel of her choice, and all other facts and circumstances attendant to the matter, the Court finds it necessary to invoke its equitable powers to issue a preliminary injunction that is designed to protect the rights of both parties to this action.

In fashioning an appropriate remedy, the Court is mindful of the interests of each party. From ClearOne's perspective, statements of counsel have clearly communicated to the Court that ClearOne's chief complaint is that counsel for both Ms. Flood and Ms. Strohm have charged excessive and unreasonable fees and have incurred unnecessary and excessive costs. ClearOne claims to simply want the benefit of its bargain–to pay reasonable attorneys' fees and costs, but no more. From Ms. Flood's perspective, she believes the fees to be necessary and reasonable and she, too, simply wants the benefit of her bargain–to have continued payment of her legal fees and costs so she can go to trial in a timely manner with the counsel of her choosing. Recognizing that these are the parties' primary concerns, the preliminary injunction will seek as much as possible to maintain the status quo and allow each side to the dispute to have access to adequate legal recourse in the future for the full protection of their contractual and constitutional rights.

This Order will require ClearOne to continue advancing fees and costs as they become due, through completion of Ms. Flood's criminal trial. This will ensure Ms. Flood continuing representation of her current legal counsel, and protect her constitutional and statutory rights to a speedy trial and effective assistance of counsel. In order to protect ClearOne's interests,

however, forty percent of the money advanced will be held in escrow, payable to Snow, Christensen, & Martineau, subject to a reasonableness determination to be made by the Court shortly after completion of Ms. Flood's criminal trial. This will ensure that ClearOne will have a source of funds available to be returned in the event any of the fees or costs are found to be unreasonable.

## DISCUSSION

### I. Preliminary Injunction Standard

Although a preliminary injunction is an extraordinary remedy, a district court does not abuse its discretion by issuing a preliminary injunction where the party seeking the injunction shows

> (1) a substantial likelihood of success on the merits; (2) irreparable harm [if the injunction does not issue]; (3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.

*General Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007). Moreover, where irreparable harm will occur, where the balance of harms favors the party seeking the injunction, and where the public interest will not be adversely affected, the "'probablility of success' prerequisite becomes more lenient. . . . [Q]uestions going to the merits [must only be] so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation." *Keirnan v. Utah Transit Authority*, 339 F.3d 1217, 1221 (10th Cir. 2003) (quoting *Resolution Trust Corp. v. Cruce*, 972 F.2d 1195, 1199 (10th Cir. 1992)).

### (A) Likelihood of Success on the Merits

Ms. Flood is substantially likely to succeed on the merits of her claim that the Employee Separation Agreement requires ClearOne to advance payment of legal fees. The contract language requiring advancement appears unambiguous. Whether a contract or a contract term is

ambiguous is determined as a matter of law. *Novell, Inc. v. Canopy Group, Inc.*, 2004 UT App 162, ¶ 20, 92 P.3d 768. In construing a contract, the intention of the parties is controlling and is to be determined by the four corners of the agreement where possible. *Id.* (quoting *WebBank v. American Gen. Annuity Serv. Corp.*, 2002 UT 88, ¶ 17, 54 P.3d 1139 (quotations omitted)). If the language embodied within the contract is unambiguous, intent is determined by that language. *Id.* Where the language is ambiguous, however, intent can be gleaned from extrinsic evidence including the parties' actions and performance. *Id.* Ambiguity is found where a contractual provision is found to be susceptible to more than one reasonable interpretation. *Id.*

The pertinent contract provisions appear in paragraph 8 of Ms. Flood's Employment Separation Agreement. It states, "ClearOne shall indemnify Flood for any liability and for all reasonable attorneys' fees and costs incurred by her in connection with the SEC Action or any Related Proceedings." Employee Separation Agreement at ¶ 8. Furthermore, paragraph 8 provides that ClearOne will "<u>continue to</u> pay for . . . reasonable defense costs incurred by Flood." *Id.* (emphasis added). Based on this language, it appears clear the parties intended that ClearOne would not only indemnify Ms. Flood for all reasonable attorneys' fees and costs, but also that the Company would advance payment for all reasonable attorneys' fees and costs.

Even if the Court were to find that the language quoted above is susceptible to more than one interpretation, Ms. Flood would still be highly likely to prevail on the merits of her claim. As mentioned above, Utah courts will use extrinsic evidence that includes the parties' actions and performance to determine what the parties intended. In this case, the parties' course of conduct shows advancement was intended. ClearOne immediately engaged in a pattern and conduct of advancement. ClearOne only ceased paying fees when ClearOne thought they were unreasonable. As discussed above, the Company issued numerous public statements referencing

its practice of, and its duty to, advance fees for Ms. Flood's legal fees. Counsel for ClearOne—the same counsel that drafted the Employment Separation Agreement—stated that ClearOne "would continue . . . to advance reasonable and necessary defense costs." Plaintiff's Memorandum in Support, Ex. P.

Although ClearOne's primary argument is that counsel for Ms. Flood has billed an unreasonable amount of legal fees, ClearOne also argues that under the Employment Separation Agreement it retained the right to cease advancing funds, or even to refuse to indemnify Ms. Flood, if (1) "the corporation [does not have] the financial ability to make the payment," or (2) the Company determines that "the financial resources of the corporation should be devoted to . . . some other use by the corporation." ClearOne's BYLAWS, Article V, § 5.1 & 5.2. For a variety of reasons, Ms. Flood claims these bylaw provisions are unenforceable. It appears to the Court that Ms. Flood's position in opposition to ClearOne's interpretation is substantially likely to succeed.

A promise is said to be illusory "[w]hen there exists only the façade of a promise." *Pierce v. Pierce*, 2000 UT 7, ¶ 21, 994 P.2d 193. In the words of Samuel Williston, a promise is said to be illusory "where the promisor retains an unlimited right to decide later the nature or extent of his performance. This unlimited choice in effect destroys the promise and makes it illusory." Samuel Williston, *The Law of Contracts* § 43, at 140 (3d ed. 1957).

It appears to the Court at this early stage in the litigation that giving effect to the bylaw provisions cited by ClearOne would render ClearOne's indemnification and advancement obligations illusory. In essence, ClearOne argues that it is only required to indemnify or advance funds so long as the company has the financial ability to do so and/or does not have a better use

for the money. Were a court to give effect to these provisions, there appears to be no intelligible standard of performance to which the Company would be held.

ClearOne argues that the bylaw provisions do not render its obligations under the contract illusory. According to ClearOne, the business judgment rule and the duty of good faith and fair dealing inherent in every contract impose a standard upon which its performance and obligations can be measured and limited. These doctrines, however, do not appear to be workable here.

The business judgment rule essentially states that where a company's Board of Directors makes a business decision, a court of law will not second guess that decision so long as it appears that the decision was exercised in good faith, with due care, and in a manner that the Board reasonably believes to be in the best interests of the corporation. *See* Utah Code Ann. § 16-10a-840. Although the business judgment rule places limitations on the actions of directors, the doctrine is directed at protecting the interests of corporate shareholders, and as such has a baseline standard. In the context of this case, the question whether ClearOne's Board has made a business decision defensible under the business judgment rule is completely different. The Court wonders what the standard would, or could, possibly be. Indeed, the Company could certainly be deemed to exercise "prudent" business judgment in determining that its money would be better used to repurchase shares of its own stock rather than spent on Ms. Flood's defense, as its Board of Directors stated on September 8, 2008. If one were to focus only on the profitability of the Company, it seems that virtually any use of the Company's money other than the payment of Ms. Flood's attorneys' fees would be in the Company's best interests. Under the facts as the Court presently understands them, it appears that adopting ClearOne's invocation of this provision is at the sole discretion of the Company, with no clearly workable standard on

which to measure the Company's decision. This appears to be the case whether analyzed under the business judgment rule, the duty of good faith and fair dealing, or in any other way.

### (B) Irreparable Harm

In the event the Court does not issue a preliminary injunction, Ms. Flood would suffer irreparable harm. Although irreparable harm is difficult to define, it has been described as injury that is "both certain and great, [but] not merely serious or substantial." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1262 (10th Cir. 2004) (quoting *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001)). Irreparable harm occurs where a "court would be unable to grant an effective monetary remedy after a full trial because such damages would be inadequate or difficult to ascertain." *Kikumura v. Hurley*, 242 F.3d 950, 963 (10th Cir. 2001). Finally, where a constitutional right is involved, irreparable injury is almost always found. *See id.*

The facts of this case show that Ms. Flood will suffer irreparable harm in the absence of an injunction. Ms. Flood faces a criminal trial in less than three weeks. In the absence of continued payment of fees and costs by ClearOne, Ms. Flood's counsel have represented to the Court that they cannot continue representation. Given the complex nature of Ms. Flood's criminal case and the looming trial date, it would seem impossible for Ms. Flood to procure effective assistance of counsel at this late juncture, particularly without a lengthy continuance of the trial date. It is well-settled that a criminal defendant is entitled to the effective assistance of counsel,[1] *United States v. Cronic*, 466 U.S. 648, 656 (1984), as well as the right to a speedy trial. U.S. Const. amend. VI. Accordingly, the Court finds that absent an injunction Ms. Flood will suffer certain and serious injury to her constitutional, statutory, and contractual rights that would

---

[1] Although this right is primarily concerned with guaranteeing an effective advocate, the Sixth Amendment does comprehend "the right to select and be represented by one's preferred attorney." *Wheat v. United States*, 486 U.S. 153, 159 (1988).

not be compensable by a monetary reward after a full trial on the merits of her breach of contract claim.

### (C) Balance of Harms

The threatened injury to Ms. Flood outweighs any harm that the preliminary injunction may cause to ClearOne. As discussed above, Ms. Flood would likely suffer grievous harm in the form of lost constitutional rights if an injunction does not issue. Any harm to ClearOne, on the other hand, would only be monetary or economic loss compensable by a damages award. Indeed, the preliminary injunction will not significantly alter the contractual obligations and rights of either party. In the event ClearOne prevails with respect to advancement, or indemnification, for that matter, Ms. Flood will be required to repay the Company for any funds improperly advanced or paid on behalf of the indemnification agreement. Furthermore, even if ClearOne may suffer some economic loss, which is highly unlikely given the nature of the injunction, such loss will not tip the balance of harms analysis in ClearOne's favor. Since simple economic loss is an insufficient basis for an injunction to issue, *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003), and loss of constitutional rights will easily support the issuance of an injunction, *see id.* at 1190, any economic loss to ClearOne cannot change the fact that the balance of harms analysis strongly favors Ms. Flood and issuance of the injunction.

Moreover, in this case issuing an injunction will merely maintain the existing status quo and will not require ClearOne to engage in any affirmative action. An injunction will only alter the status quo where "it changes the 'last peaceable uncontested status existing between the parties before the dispute developed.'" *See Summum v. Pleasant Grove City*, 483 F.3d 1044, 1049 (quoting *Schrier v. Univ. of Colorado*, 427 F.3d 1253, 1258 (10th Cir. 2005)).

Additionally, an injunction is considered mandatory where it will require a party to make an affirmative action beyond what it was already doing "during the last uncontested period preceding the injunction." *Dominion Video*, 269 F.3d at 1155. The present dispute arose when ClearOne ceased advancing legal fees. The last peaceable uncontested status existing between the parties involved ClearOne advancing legal fees as they became due. An injunction requiring ClearOne to continue advancing legal fees as fees become due will not alter the status quo, nor will it mandate that ClearOne take affirmative action beyond what it was already doing.

### (D) Public Interest

Issuing an injunction will not adversely affect the public interest. The public interest favors a speedy resolution of criminal cases. The public interest also favors protection of a criminal defendant's constitutional rights. This is especially true where the injunction is as narrow and limited as in this case.

### CONCLUSION AND ORDER

The Court finds that equity requires a preliminary injunction to issue as follows:

- ClearOne shall pay 100% of all Ms. Flood's costs and legal fees, based on invoices submitted by Snow, Christensen, & Martineau, as the fees and costs become due, through the conclusion of Ms. Flood's criminal trial. ClearOne shall also pay all past-due invoices.

- The payment of legal fees and costs shall be disbursed as follows:
    - 60% of the invoice amount shall be paid directly to Ms. Flood's attorneys, Mr. Max Wheeler, et al, at Snow, Christensen, & Martineau.
    - 40% of the invoice amount shall be sent directly to the Clerk of the Court for the United States District Court for the District of Utah, to be held in escrow

and payable to Snow, Christensen, & Martineau, subject to a reasonableness determination by the Court. This determination will address all issues of reasonableness raised by ClearOne from the beginning of the legal services, and be made shortly after completion of the criminal trial. To the extent fees or costs are found to be unreasonable, the monies held in escrow shall be refunded to ClearOne.

IT IS SO ORDERED.

Dated this 12th day of January, 2009.

Dee Benson
United States District Judge