IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| FRANCES M. FLOOD, <br><br> Plaintiff, <br><br> vs. <br><br> CLEARONE COMMUNICATIONS, INC., a Utah corporation, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER** <br><br><br><br> Case No. 2:08-CV-631 |

## BACKGROUND

Plaintiff Frances Flood is a former Chief Executive Officer, President, and Chairperson of the board of directors of Defendant ClearOne Communications, Inc. ClearOne is a publicly traded company in the business of selling audio and video conferencing equipment.

On January 15, 2003, the United States Securities and Exchange Commission filed a civil action against ClearOne, Ms. Flood, and ClearOne's Chief Financial Officer, Susie Strohm, alleging various improprieties and misstatements in connection with the company's financial statements. This action spawned related proceedings, including a grand jury criminal investigation. Soon after the SEC filed its action, ClearOne placed Ms. Flood on paid administrative leave. This leave continued until December 5, 2003, when the parties executed an Employment Separation Agreement ("ESA"). Interpretation of the ESA is at issue in this case.

The ESA recites the circumstances under which it was negotiated. It states that Ms. Flood had a written Employment Agreement with ClearOne that provided ClearOne could only terminate Ms. Flood's employment for willful misconduct. Furthermore, the ESA states that it was negotiated as a result of Ms. Flood's demands on ClearOne for indemnification and advancement of attorneys' fees and costs incurred by her in defending herself in the SEC Action and any related proceedings. After ClearOne referred these demands to its Special Litigation Committee, the company agreed to negotiate the ESA. The Committee recommended against pursuit of various derivative actions against Ms. Flood and that "the Company should attempt to negotiate a settlement of Flood's indemnification demand in the context of negotiating a global settlement of all potential claims and counterclaims between the Company and Flood." Pl.'s Mem. in Supp. of Summ. J. Ex. A ¶ H.

Execution of the ESA resulted in the following consequences. First, Ms. Flood agreed to transfer her shares of ClearOne's common stock to the company. Second, Ms. Flood agreed to the cancellation of her stock options valued at approximately $3.5 million. Third, Ms. Flood agreed to the cancellation of her Employment Agreement with the company, which provided for two additional years of employment with a cumulative salary of $675,000. Fourth, Ms. Flood agreed to release ClearOne from liability for all claims she may have against the company. In exchange for these promises, ClearOne agreed to pay Ms. Flood $350,000. The ESA also provided that ClearOne would release Ms. Flood from liability for claims it may have against her, that Ms. Flood would cooperate with ClearOne in the SEC Action and related proceedings, and that ClearOne would provide indemnification for Ms. Flood and continue to advance funds to pay for her ongoing legal fees and expenses.

Concerning advancement of legal fees and indemnification, the ESA provides in pertinent part that ClearOne will indemnify Ms. Flood for any liability and all reasonable attorneys' fees and costs that she may incur in connection with either the SEC Action or any other actions related thereto. The pertinent provision reads as follows:

> [s]ubject to the limitations imposed by Utah Code Ann. § 16-10a-902 and the Company's articles of incorporation and bylaws . . . ClearOne shall indemnify Flood for any liability and for all reasonable attorneys' fees and costs incurred by her in connection with the SEC Action or Related Proceedings . . . . The Company's duty to indemnify Flood is further conditioned upon Flood's fulfillment of her duty . . . to cooperate with the Company and its counsel in connection with the SEC Action and Related Proceedings. Subject to the foregoing limitation, ClearOne will continue to pay for the reasonable defense costs incurred by Flood in defending matters or future matters, if any, which may arise from or relate to her tenure as an officer or director of ClearOne.

*Id.* ¶ 8.

ClearOne's bylaws briefly address indemnification and advancement of attorneys' fees. The applicable provisions state that prior to indemnification or advancement for attorneys' fees and costs, the board of directors must conclude that "the expenses are reasonable, the corporation has the financial ability to make the payment, and the financial resources of the corporation should be devoted to this use rather than some other use by the corporation." Def. Mem. in Supp. of Mot. to Dismiss Pl.'s Compl. or, Alternatively for Summ. J. Ex. 1.

After execution of the ESA, ClearOne promptly paid Ms. Flood's counsel, Max Wheeler and the law firm of Snow, Christensen & Martineau, for legal fees incurred to that point in time.

In May 2007, Ms. Flood's attorneys began work related to the criminal indictment and ClearOne continued to pay Ms. Flood's defense costs as they became due. By about May 2008, ClearOne had paid in full at least eight invoices from Ms. Flood's attorneys and had only refused

to pay for one focus group that Ms. Flood's counsel thought necessary for her defense. ClearOne apparently felt this focus group was an unreasonable expense. Although ClearOne initially disputed the reasonableness of this item and some other costs, an attorney for ClearOne ultimately represented to Ms. Flood on April 25, 2008, that "[t]he Company has not and does not intend to substitute its decisions for those of defense counsel. The Company has and will continue to meet its obligation to advance reasonable and necessary defense costs." Pl.'s Mem. in Supp. of Summ. J. Ex. P.

In addition to making representations to Ms. Flood that ClearOne would continue to advance funds pursuant to the ESA, ClearOne made various public statements concerning its obligations to advance funds and indemnify Ms. Flood. On July 27, 2007, ClearOne stated that "the Company has a direct financial obligation to indemnify [Ms. Flood] for any liability and for all reasonable attorney's fees and costs incurred in defending against the charges brought by the United States Attorney." *Id.* Ex. B. On September 30, 2007, the company made a similar statement in a public filing and stated that the company would be liable for approximately $1.8 million "through trial, [for] the advancement of funds that related to the indemnification agreements" of Ms. Flood and Ms. Strohm. *Id.* Ex. C. The company continued to reiterate these statements in multiple press releases, although the estimates for ClearOne's total liability increased steadily until ClearOne stated that it had "a $3.3 million accrual for a contingent liability associated with the advancement of funds related to indemnification agreements with two former officers." *Id.* Ex. G.

Despite its public statements and assurances to Ms. Flood otherwise, ClearOne stopped paying Ms. Flood's attorneys' fees and costs in approximately May 2008. On August 11, 2008,

Brian S. Cousin, counsel for ClearOne, contacted Ms. Flood's attorneys and indicated that he had been retained by ClearOne to address Ms. Flood's claims for advancement of legal fees and costs related to the criminal matter. He further stated that

> ClearOne would like [Ms. Flood's counsel] to put together a proposal for a fixed fee billing arrangement, which should reflect a significant discount off of . . . the most recent estimate, to cover all of [Ms. Flood's] legal fees and expenses [related to the criminal case] through verdict or plea agreement.

*Id.* Ex. Q. Ms. Flood responded by demanding that ClearOne pay to her counsel all outstanding legal fees and costs. ClearOne then requested that Mr. Wheeler agree to a tiered compensation structure for fees and costs in recognition of the scheduled trial date.

Furthermore, on September 8, 2008, ClearOne's board of directors adopted a resolution finding that (a) the company was not able to determine whether Ms. Flood's attorneys' fees and costs were reasonable, (b) the best interests of the company and its stockholders would be served by using all of the company's available money to fund a cash-tender offer of the company's stock and to hold all remaining cash in reserve, and (c) the company's finances should no longer be devoted to advancing legal fees and costs to Ms. Flood's counsel. Ms. Flood filed this lawsuit shortly afterwards, alleging that ClearOne's actions breached the ESA. Ms. Flood also sought declaratory and injunctive relief.

Recognizing that Ms. Flood faced a looming trial date only weeks away, the parties agreed to address Ms. Flood's claims in an expeditious manner. After a motion hearing on September 19, 2008, the parties filed cross motions for summary judgment. The Court heard oral argument on the motions on November 12, 2008, and took the motions under advisement.

In an attempt to avoid potential delay in the criminal trial due to the possibility of appellate review no matter how the Court ruled, the Court encouraged the parties to settle. At a status conference on January 8, 2009, the Court informed the parties that it was considering issuing a preliminary injunction if the parties could not reach a resolution. Settlement did not occur and the Court issued a preliminary injunction.

The preliminary injunction attempted to preserve the status quo and protect the interests of both parties. ClearOne expressed concern that advancing funds to Ms. Flood's counsel would likely preclude any recovery of its expenditures even if a reasonableness determination later revealed that Ms. Flood's attorneys' fees and costs were unreasonable. Ms. Flood, on the other hand, faced the prospect that her attorneys would not continue their services on her behalf if they did not get paid. She wanted to go to trial as scheduled while being represented by the attorneys of her choice. Therefore, the Court's preliminary injunction required that ClearOne continue advancing legal fees and costs to Ms. Flood's counsel through the end of her criminal trial, but required forty percent of the money to be held in escrow by the Clerk of the Court, subject to disgorgement should the Court later find that some part of Ms. Flood's fees and costs were unreasonable. By fashioning the injunction in this manner, Ms. Flood and her attorneys could be assured her attorneys' fees and costs would be paid through the end of her upcoming criminal trial, and ClearOne could be assured that it would not be paying unreasonable fees with no prospect of recovery.

The criminal trial began on February 2, 2009. In accordance with the preliminary injunction, ClearOne paid Ms. Flood's counsel on January 20, 2009, for services previously rendered. On February 12, 2009, however, Ms. Flood once again sought this Court's assistance.

It appeared to Ms. Flood that payment by ClearOne of a February 3, 2009, invoice was not forthcoming. In order to clarify the requirements of the preliminary injunction, the Court issued an Order on February 20, 2009, requiring ClearOne to remit payment to Ms. Flood's counsel within 10 days of each invoice receipt. ClearOne paid the February 3, 2009, invoice on February 25, 2009.

On February 27, 2009, the jury in the criminal trial reached its verdict, finding Ms. Flood guilty on all nine counts on which she had been indicted. At that time, ClearOne had not yet made payment to Ms. Flood's counsel for an invoice dated February 17, 2009. Given Ms. Flood's guilty verdict, ClearOne refused to make any further payment. On March 3, 2009, ClearOne's board issued a resolution determining that Ms. Flood's conduct as ClearOne's CEO had not been in good faith, that Ms. Flood had not reasonably believed her conduct was in ClearOne's best interests, and that Ms. Flood had reasonable cause to believe that her conduct was unlawful. Subsequently, ClearOne refused to pay Ms. Flood's counsel for attorneys' fees and costs incurred prior to the guilty verdict, as reflected in a March 4, 2009, invoice.

In response to a request by Ms. Flood, the Court held a Show Cause Hearing on April 16, 2009, ordering ClearOne to defend its actions and show cause why it should not be held in contempt for refusing to pay Ms. Flood's incurred costs and fees through the end of her trial as it was ordered to do. Following that hearing, the Court reiterated that its purpose in issuing the preliminary injunction was to ensure that Ms. Flood would remain represented by her counsel through the conclusion of her criminal trial. The Court therefore, consistent with its earlier order, required ClearOne to pay Ms. Flood's counsel for costs and fees incurred up to the time the verdict was reached. The Court did, however, modify its previous ruling to provide that the

funds on deposit with the Court may be recoverable by ClearOne if ClearOne's final payments are found to have violated public policy.

The Court will now address the merits of the motions before the Court.

## DISCUSSION

### I.  Ms. Flood's Motion for Summary Judgment

#### A.  Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure states that summary judgment is appropriate where the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c). When applying this standard, the court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).

#### B.  Interpretation of the Employment Separation Agreement

The primary issue before the Court concerns the proper interpretation of the ESA. In construing a contract, the Court must determine the intention of the parties by examining the four corners of the agreement. *Novell Inc. v. Canopy Group, Inc.*, 2004 UT App 162, ¶ 20, 92 P.3d 768. Because ClearOne and Ms. Flood agree that the language embodied within the ESA is unambiguous, the Court must determine the parties' intent by examining that language. *See id.*

The pertinent language of the ESA states that

> [s]ubject to the limitations imposed by Utah Code Ann. § 16-10a-902 and the Company's articles of incorporation and bylaws . . . ClearOne shall indemnify Flood for any liability and for all reasonable attorneys' fees and costs incurred by her in

> connection with the SEC Action or Related Proceedings . . . . ClearOne will continue to pay for the reasonable defense costs incurred by Flood in defending matters or future matters, if any, which may arise from or relate to her tenure as an officer or director of ClearOne.

Pl.'s Mem. in Supp. of Summ. J. Ex. A ¶ 8. The parties agree that this language imposed on ClearOne obligations of indemnification for potential liability and advancement of attorney fees and legal costs incurred by Ms. Flood in order to defend against criminal or civil proceedings related to the SEC action. Additionally, ClearOne admits that the language of the ESA contemplated advancement of legal fees in the criminal case against Ms. Flood. *See* Def.'s Mem. in Opp. to Pl.'s Mot. for Summ. J. p. 12. ClearOne argues, however, that its bylaws provide it with authorization to avoid its advancement obligations if its board of Directors determines that (1) the fees and costs are not reasonable, (2) the company does not have the financial ability to advance funds or provide indemnification, or (3) the company's financial resources should be devoted to a purpose other than advancement or indemnification. According to ClearOne, the board's September 8, 2008, resolution did just this. ClearOne's interpretation of the ESA, however, lacks merit.

Utah law requires courts to "interpret the terms of a contract in light of the reasonable expectations of the parties, looking to the agreement as a whole and to the circumstances, nature, and purpose of the contract." *Peirce v. Peirce*, 994 P.2d 193, 198 (Utah 2000). In this case, the intent and reasonable expectations of the parties are easily ascertained by looking to the ESA itself. The ESA begins with a section entitled "Recitals." The Recitals make clear that the parties negotiated the ESA as a result of the SEC Action and the likelihood of future related litigation proceedings and potential criminal charges. Furthermore, the Recitals clearly state that

the ESA was negotiated due to Ms. Flood's demands for indemnification and advancement of attorneys' fees and costs. The Court could not harmonize these statements with an interpretation of the subsequent contractual language that allows ClearOne to escape its advancement obligations based on later unilateral determinations made by ClearOne's board of directors.[1] The ESA clearly reveals that at the time the parties executed the ESA, an irrevocable advancement obligation was intended.

      The ESA as a whole supports this interpretation. In consideration of the promises made by ClearOne, Ms. Flood provided ClearOne with a release of claims, agreed to cooperate with ClearOne, and agreed to resign from her positions as CEO and Chairman of the board—positions that if held through the end of her employment agreement would result in $675,000 of compensation. Additionally, Ms. Flood surrendered to ClearOne shares of ClearOne's common stock and forfeited numerous stock options valued at approximately $3.5 million. In return, Ms. Flood received a release of claims from ClearOne, a payment of $350,000, and the promises of advancement and indemnification. If the Court were to find that ClearOne's advancement obligations were revocable at will by the company simply because they later decided it would be better to spend their money on something else, the consideration paid by ClearOne would be wholly inadequate for that paid by Ms. Flood. When interpreting a contract under Utah law, an equitable and fair result will prevail over a harsh and unreasonable result unless "the contract so

---

[1] ClearOne's contrary interpretation would essentially allow it to make an after-the-fact determination at the conclusion of Ms. Flood's criminal proceeding that advancement of her attorneys' fees is not an appropriate use of the company's resources. The bargain reflected in the ESA does not contemplate this type of an after-the fact determination that would deprive Ms. Flood of the benefits of her bargain. She would have agreed to quit her job, to relinquish all of her stock and stock options, to take no action against the company, and to cooperate with the company in connection with all of the investigations, only to be notified later that the company had decided it had better things to do with its money than to pay for her attorneys. As discussed below, in addition to constituting a misinterpretation of the ESA, such interpretation would render ClearOne's obligations illusory.

expressly and unequivocally so provides that there is no other reasonable interpretation to be given it." *Id.* at 198 (quoting *Plain City Irr. Co. v. Hooper Irr. Co.*, 356 P.2d 625, 628 (Utah 1960)) (internal quotations omitted). ClearOne's bylaws do not provide such an express and unequivocal mandate, especially considering that the bylaws can be interpreted in another reasonable manner.

The bylaws condition both advancement and indemnification of a former director or officer on a conclusion by ClearOne's board of directors that the expenses are reasonable, that ClearOne is financially capable of making payment, and that ClearOne's financial resources should not be devoted to another purpose. Because the bylaws also condition advancement and indemnification on several initial steps, including a written affirmation by the former officer that her conduct was made in good faith and execution of a written undertaking to repay advanced funds if she is found to have not met the required standard of conduct, the bylaw limitations on advancement should be read likewise. The limitations require an initial determination by ClearOne's board that it is within the interests of the company to spend its resources in this manner. This interpretation is the only reasonable one under the circumstances and give meaning to all of the ESA's terms.

ClearOne's proposed interpretation is not unreasonable but would render the contract illusory. In the words of Samuel Williston, a promise is illusory "where the promisor retains an unlimited right to decide later the nature or extent of his performance. This unlimited choice in effect destroys the promise and makes it illusory." Samuel Williston, *The Law of Contracts* § 43, at 140 (3d ed. 1957). Likewise, Utah courts find a promise illusory "[w]hen there exists only the façade of a promise." *Pierce*, 2000 UT 7, ¶ 21.

ClearOne's interpretation of the ESA and bylaws states that the board of directors can determine whether it will perform its advancement obligations based on its independent financial decisions and determinations as time goes on. Ms. Flood does not dispute that ClearOne only agreed to pay reasonable fees and costs. For this reason, the Court fashioned its preliminary injunction in a manner that would provide ClearOne with a remedy in the event Ms. Flood's costs are found to be unreasonable. But with respect to the other two bylaw provisions that ClearOne claims allow it to escape its advancement obligation, those provisions cannot be interpreted as ClearOne claims. Were the Court to do so, ClearOne would have essentially bound itself to nothing, rendering its obligations illusory. A simple example illustrates the point.

Suppose that Gamble travels to Las Vegas to place a bet on the NCAA Basketball Tournament. Gamble approaches Bookie in an off-the-strip alleyway. After a brief negotiation, the parties decide to strike a bargain. Gamble agrees to bet Bookie $100,000 that the North Carolina Tar Heels will win the NCAA Tournament. Bookie agrees to give Gamble 3-to-1 odds. The parties memorialize their agreement in writing. As a part of the written deal, however, Bookie includes a provision that refers to his "standard rules" that he is not required to pay winnings if (1) he does not have the financial ability to make the payment, or (2) he has a better use for his money in connection with his wagering/bookmaking business than to pay Gamble. After the Tar Heels win, not surprisingly, Bookie tells Gamble that first, his decision to make another investment has left him without the financial ability to pay Gamble, and second, the money he does have would be better spent on the investment that is likely to be better for his business than to pay Gamble. Bookie bound himself to nothing.

ClearOne attempts to avoid the illusory nature of its obligations by arguing that the duty of good faith and fair dealing inherent in every contract, coupled with the business judgment rule, prevent its obligations from being unenforceable. ClearOne states that "the Board's exercise of good faith and honest judgment render its limited payment promise to Ms. Flood both non-illusory and enforceable." Def.'s Supplemental Br. Concerning Illusory Promise Issue p. 5. These principles, however, are not applicable here.

ClearOne relies on *Resource Management Co. v. Weston Ranch and Livestock Co., Inc.*, 706 P.2d 1028 (Utah 1985). In that case, the Utah Supreme Court ruled that the duty of good faith and fair dealing prevents parties from exercising a reserved contract termination power arbitrarily and can thus prevent an illusory finding by a court. *Id.* at 1038. That case, however, is distinguishable from the case presently before the Court.

The contract provision in *Resource Management* related to a mineral lease on property and provided that the plaintiff could,

> in its sole discretion, terminate th[e] Agreement in the event it determine[d] there [was] not sufficient promise of minerals of commercial value on the subject properties covered by the Agreement, sufficient to justify the further expenditures of time or money by [the plaintiff].

*Id.* at 1034. Although the Utah Supreme Court held this power valid, the power reserved by this provision is entirely different from the power ClearOne claims to have retained in this case because the *Resource Management* provision was amenable to an objective standard through which the plaintiff's decision to terminate the agreement could be measured. If the opposing party challenged the plaintiff's decision to terminate the agreement, a court could examine evidence including expert testimony and geological

-13-

studies to determine whether the decision had rested on solid evidence and had been made in good faith. But no such objective determination could be made here. Just as no person could question Bookie's decision to refuse to pay winnings to Gamble in the example above (other than on moral grounds), no conceivable good faith standard exists against which the Court could measure ClearOne's determination that its finances are either insufficient to make payment to Ms. Flood or better used for another purpose.[2]

ClearOne argues that the business judgment rule provides the objective standard needed to measure its board's actions. That may be so in other cases, but not in this one. The business judgment rule places limitations on businesses based on the interests of a company's shareholders, not the interests of those with whom the company does business. In the context of this case, it could not be seriously questioned that the board's decision to cease advancing funds would be in the best interests of its shareholders. Had Ms. Flood prevailed at her criminal trial, the fees advanced would have represented a sunk cost for which ClearOne never recognized any significant gain. And even if Ms. Flood is found to be non-indemnifiable, the possibility exists the ClearOne will never see any repayment of the advanced legal fees. The business judgment rule is simply not applicable here.

---

[2] It is difficult to imagine, if such an issue were to go to a jury trial, how the Court would instruct the jury. "If you find that ClearOne exercised good faith and honest judgment when it decided its shareholders' interests would be better served by using its money for purposes other than paying for the criminal defense of its former officer charged with multiple counts of securities fraud, then you should return a verdict in ClearOne's favor." Or, "Should you determine that ClearOne's other financial obligations prevented it from having sufficient cash on hand to pay for Ms. Flood's defense, you should return a verdict in ClearOne's favor." The point is that without a clear statement from ClearOne that its course of conduct was solely designed to allow it to stop advancing funds to Ms. Flood, ClearOne's actions could never be challenged, and even in that event, the proposition is debatable. Indeed, any rational board of directors should be able to design a better use for its money than to pay several million dollars to criminal defense lawyers for its former executive accused (and actually found guilty) of fraud. Similarly, as to the other bylaw in question, if financial ability were the prerequisite to the performance of an obligation to pay money pursuant to a contract, all contracts would cease as soon as the payor figured out a way to spend all of his money on something else.

ClearOne's argument that the bylaws justify its decision to stop advancing funds for Ms. Flood's criminal defense fails.  The plain language of the ESA supports an interpretation that at the time it signed the ESA, ClearOne made the decision that it had the resources to advance funds for Ms. Flood's attorneys' fees and expenses as they became due and that such a use of its resources in connection with Ms. Flood's obligations under the ESA constituted an appropriate use of its money.  Thereafter, ClearOne was obligated to continue advancing funds for Ms. Flood's defense at least until a verdict of guilty was returned.  As evidenced by the ESA itself, Ms. Flood's demands for advancement of legal fees and indemnification played a pivotal role in the execution of the ESA.  To allow ClearOne to avoid its advancement obligations, particularly when Ms. Flood faced a looming trial date, would have created a harsh and inequitable result.  In order to give effect to all the provisions of the ESA, the disputed bylaw provisions must be read to reflect an initial determination concerning ClearOne's financial state by its board of Directors prior to entering into the ESA.  To interpret the ESA otherwise would result in the Court striking the disputed bylaw provisions because they would render ClearOne's obligations illusory and unenforceable.  Accordingly, the Court GRANTS Ms. Flood's motion for summary judgment on her Third Claim for Relief.

## II.     ClearOne's Motion to Dismiss Plaintiff's Complaint or for Summary Judgment

ClearOne has moved the Court to dismiss Ms. Flood's complaint, or alternatively, for summary judgment in its favor on Ms. Flood's claims.  The Court GRANTS in part, and DENIES in part, ClearOne's motion.

ClearOne premises its motion to dismiss on Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Under Rule 12(b)(6), a complaint will only be dismissed if it fails to state a claim

upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Because ClearOne's arguments concerning Ms. Flood's First, Second, Third, Sixth, and Seventh Claims for Relief primarily focus on interpretation of the contract at issue rather than the facts as pled in the complaint, the Court addresses ClearOne's motion in these regards as one for summary judgment.

ClearOne's motion is DENIED with respect to Ms. Flood's First (Declaratory Relief), Second (Injunctive Relief), Third (Breach of Contract), Sixth (Indemnification), and Seventh (Breach of the Covenant of Good Faith and Fair Dealing) Claims for Relief. As discussed above, the Court has granted Ms. Flood relief with respect to her Breach of Contract and Injunctive Relief claims. Furthermore, Ms. Flood's Declaratory Relief claim is sufficiently related to her Breach of Contract claim to preclude summary judgment. Finally, genuine issues of material fact exist concerning Ms. Flood's Indemnification and Breach of the Covenant of Good Faith and Fair Dealing claims that preclude summary judgment.

With respect to Ms. Flood's Fourth (Unjust Enrichment) and Fifth (Promissory Estoppel) Claims for Relief, ClearOne's motion is GRANTED. Ms. Flood states that she pled these causes of action in the alternative to account for a possible ruling by the Court that the ESA does not provide her with a contractual remedy. The Court has determined that Ms. Flood does have such a remedy. Equitable claims such as those pled in Ms. Flood's Fourth and Fifth Claims for Relief are generally barred by the existence of an enforceable agreement. *See Am. Towers Owners Ass'n, Inc. v. CCI Mech., Inc.*, 930 P.2d 1182, 1192 (Utah 1996); *Mann v. Am. W. Life Ins. Co.*, 586 P.2d 461, 465 (Utah 1978).

Finally, with respect to Ms. Flood's Eighth Claim for Relief (Intentional Infliction of Emotional Distress), ClearOne's motion is DENIED. A plain reading of the complaint

demonstrates that Ms. Flood has alleged ClearOne engaged in outrageous and intolerable conduct by refusing to continue advancing costs while knowing that Ms. Flood's criminal trial was imminent. According to Ms. Flood, ClearOne's purpose was to inflict emotional distress, or alternatively, that any reasonable person would have known that emotional distress would result from the actions of ClearOne. These allegations are sufficient to state a claim for relief based on intentional infliction of emotional distress. *See Anderson Development Co., L.C. v. Tobias*, 116 P.3d 323, 338 (Utah 2005).

## **CONCLUSION**

Based on the foregoing, the Court finds that ClearOne breached its agreement with Ms. Flood to advance her attorney fees and costs for her criminal defense when it ceased its payments to Ms. Flood's attorneys. Ms. Flood's Motion for Summary Judgment on her Third Claim for Relief is GRANTED. ClearOne's Motion to Dismiss Plaintiff's Complaint, or Alternatively for Summary Judgment, is GRANTED in part and DENIED in part. Finding that Ms. Flood and ClearOne executed a valid and enforceable agreement that addresses the rights, duties, and obligations encompassed by Ms. Flood's Fourth and Fifth Claims for Relief, the Court GRANTS ClearOne's motion and DISMISSES those claims. With respect to the rest of the claims pled by Ms. Flood, ClearOne's motion is DENIED.

IT IS SO ORDERED.

Dated this 15th day of June, 2009.

Dee Benson
United States District Judge