IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| FRANCES M. FLOOD,<br><br>               Plaintiff,<br><br>v.<br><br>CLEARONE COMMUNICATIONS, INC. a Utah Corporation,<br><br>               Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:08-CV-00631-CW<br><br>Judge Clark Waddoups |

**INTRODUCTION**

Before the court is the motion (Dkt. No. 88) of Defendant ClearOne Communications ("ClearOne") for restitution of money paid on behalf of Plaintiff Frances M. Flood ("Flood") to her attorneys for return of money paid to the court and held in escrow, and for vacatur of an order granting summary judgment previously issued in this matter. For the reasons discussed below, the court denies ClearOne's motion to restore money paid to Flood's attorneys, grants its motion for return of money held by the court in escrow, and vacates as moot the order granting summary judgment previously issued in this matter.

**FACTUAL BACKGROUND**

Ms. Flood is the former Chief Executive Officer, President, and Chairperson of the board of directors of ClearOne. In January of 2003, the Securities and Exchange Commission ("SEC") filed a civil suit against ClearOne, Flood, and ClearOne's Chief Financial Officer, alleging various improprieties and misstatements in connection with the company's financial statements.

A grand jury criminal investigation into the conduct of Flood and others began soon thereafter. As a result of the SEC's actions, ClearOne placed Flood on administrative leave.

In August of 2003, Flood made a formal request that ClearOne indemnify and provide advance reimbursement of her legal expenses in connection with the civil and criminal actions taken against her. In order to qualify for advances under Utah law, Flood also declared in writing that she had always acted in good faith as an officer of ClearOne, that her conduct was in ClearOne's best interest, and that she promised to repay any advance reimbursement of her legal expenses if it was "ultimately adjudged that [she] did not meet the requisite standard of conduct." Letter to ClearOne Re: Request for Advanced Indemnification of Costs and Fees, Ex. 1 (Dkt. No. 79.)

ClearOne referred Flood's request for indemnification and advances to a Special Litigation Committee, and soon thereafter, Flood and ClearOne negotiated an Employment Separation Agreement ("Separation Agreement"). The Separation Agreement provided that Flood would transfer her shares of ClearOne's common stock back to the company; agree to the cancellation of her stock options valued at approximately $3.5 million; agree to the cancellation of her Employment Agreement with the company, which had provided for two additional years of employment with a cumulative salary of $675,000; release ClearOne from liability for all claims she might have against the company; and cooperate with ClearOne in the SEC Action and related proceedings. In exchange for these promises, ClearOne agreed to pay Flood $350,000, to release her from liability for any claims the company might have against her, and to indemnify and advance reimbursement for her ongoing legal expenses and fees.

After the execution of the agreement, ClearOne advanced funds to Flood's counsel for the legal fees and expenses that had accrued to that point and continued to advance payment as

additional fees and expenses were incurred, including fees for Flood's criminal defense following an indictment. Nevertheless, in May 2008, ClearOne terminated its advance reimbursement of Flood's attorneys' fees. ClearOne's counsel contacted Flood's attorneys in August 2008 to attempt to negotiate a reduction of legal fees, but was unsuccessful.

On August 21, 2008, Flood filed this action against ClearOne for breach of the Separation Agreement. Shortly thereafter, ClearOne's board of directors adopted a resolution stating that the company's finances should no longer be devoted to advancing legal fees and costs to Ms. Flood's counsel, concluding, inter alia, that the Separation Agreement allowed ClearOne to discontinue advancing such fees if it concluded that to do so was no longer in the company's best interest.

Because Flood faced a looming trial date on her criminal charges, the parties agreed to ask the court to address Flood's claims in an expeditious manner. In response to the parties' request, the court urged the parties to settle to avoid potential delays in the criminal trial. When the parties failed to do so, Judge Dee Benson issued a preliminary injunction in favor of Flood concluding that ClearOne's interpretation of the Separation Agreement would render the agreement illusory. *See* Preliminary Injunction (Dkt. No. 35.) The preliminary injunction ordered ClearOne to continue advancing legal fees and costs to Flood's counsel through the end of her criminal trial, but required that forty percent of the money be held in escrow by the Clerk of the Court, subject to disgorgement should the court later find that some part of the fees and costs were unreasonable. The court stated that the purpose of the escrow was to allow Flood to retain her counsel of choice and proceed with her criminal trial without delay and to allow ClearOne the assurance of recovery should it prove that any part of the fees or costs were

unreasonable.  ClearOne filed an interlocutory appeal with the Tenth Circuit on February 11, 2009, challenging the issuance of the preliminary injunction.

Following a lengthy criminal trial, Flood was found guilty on all nine counts on which she had been indicted.  Flood's conviction was upheld on appeal.  *See United States v. Flood*, 635 F.3d 1255 (10th Cir. 2011).  Once the guilty verdict was entered, and despite the preliminary injunction, ClearOne refused to make further payments towards Flood's legal expenses, claiming that Flood's conviction eliminated any obligation to continue advancing fees.  ClearOne also refused to pay fees and costs that had been incurred prior to the guilty verdict.  On March 3, 2009, ClearOne's board issued a resolution stating that Flood's conduct as CEO had not been in good faith, that Flood had not reasonably believed her conduct was in ClearOne's best interests, and that Flood had reasonable cause to believe that her conduct was unlawful.  *See* Resolution of the Board of Directors of ClearOne Communications, Inc., Ex. 4 (Dkt. No. 50.)  The resolution also stated that ClearOne was prohibited from indemnifying Flood and directed its counsel to "use all reasonable means to end or disprove any claimed legal obligation that ClearOne may have to pay any additional defense legal fees and costs on behalf of Flood and to recoup money already paid to Flood and/or her counsel."  *Id.*

ClearOne also filed a motion to have the preliminary injunction modified, arguing that the jury verdict proved that Flood failed to meet the standard of conduct required to make her eligible for indemnification and advancement of fees and that ClearOne was therefore prohibited by Utah law and its own bylaws from indemnifying or advancing payment to Flood.  The court denied ClearOne's motion to modify the preliminary injunction and required ClearOne to comply with the preliminary injunction and pay Flood's legal fees and costs up to the time of the verdict in the criminal trial.  ClearOne filed an interlocutory appeal challenging the court's

refusal to modify the preliminary injunction in light of Flood's criminal conviction, and filed a motion to stay further payment obligations pending appeal. The district court denied ClearOne's motion to stay further payment obligations pending appeal, but a similar motion was ultimately granted by the Tenth Circuit on May 21, 2009.

On June 15, 2009, Judge Benson issued an order granting summary judgment in favor of Flood on her breach of contract claim, and granting in part and denying in part ClearOne's motion to dismiss.[1] *See* Mem. Decision Granting Mot. Summ. J. (Dkt. No. 75.) The parties then proceeded to address Flood's remaining claims.

On August 30, 2010, the Tenth Circuit vacated the preliminary injunction and remanded the case to the district court on the ground that the preliminary injunction was based on an incorrect application of the illusory contract theory. *See Flood v. ClearOne Commc'ns, Inc.*, 618 F.3d 1110, 1116 (10th Cir. 2010). Judge Benson recused himself on remand and the case was reassigned. Shortly thereafter, ClearOne filed the motion which the court now addresses.

## ANALYSIS

I.     **VACATUR OF PRIOR SUMMARY JUDGMENT ORDER**

The court will first address ClearOne's motion to vacate the summary judgment order issued by Judge Benson on June 15, 2009. Federal Rule of Civil Procedure 54(b) states:

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or

---

[1] Judge Benson granted ClearOne's motion to dismiss with respect to Flood's unjust enrichment and promissory estoppel claims on the grounds that Plaintiff had admitted that these were pled in the alternative to the breach of contract claim. The court denied the motion to dismiss with respect to Flood's declaratory relief, injunctive relief, statutory indemnification, breach of covenant of good faith and fair dealing, and intentional infliction of emotional distress claims.

> parties and *may be revised at any time* before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

(Emphasis added). This rule gives judges wide discretion to vacate and revise summary judgment orders prior to final judgment in the case. *See Flood*, 618 F.3d at 1116 ("by operation of the federal rules of civil procedure [the district court] is free to revise or revisit its summary judgment order at any time") (quotations and citations omitted). Although typically a court should be cautious and exercise restraint when reconsidering a decision entered by a fellow judge, the change in circumstances brought about by the Tenth Circuit's reversal, and the judgment entered against Flood, make such a review appropriate in this case.

ClearOne argues that the summary judgment order is based on the same rationale that was rejected by the Tenth Circuit when the preliminary injunction order was vacated, and therefore should not stand. Flood disputes ClearOne's contention that the summary judgment order was based on the same rationale as the preliminary injunction order, arguing that Judge Benson granted Flood's motion for summary judgment on the grounds that ClearOne's interpretation of the contract was not valid instead of on an illusory promise theory. The court, however, need not resolve the dispute because the claims addressed on summary judgment are now moot.

As a Utah corporation, the circumstances under which ClearOne can indemnify and advance reimbursement of legal fees and costs to its directors is governed by statute. Utah Code Annotated § 16-10a-902 establishes a standard of conduct that a director must have complied with in order to be indemnified by a corporation:

> (1) Except as provided in Subsection (4), a corporation may indemnify an individual made a party to a proceeding if:
> (a) his conduct was in good faith; and

> (b) he reasonably believed that his conduct was in, or not opposed to, the corporation's best interests; and
> (c) in the case of any criminal proceeding, he had no reasonable cause to believe his conduct was unlawful.

Utah Code Ann. § 16-10a-902(1) (2011).

Utah Code Annotated § 16-10a-904 describes the requirements that must be met for a director to receive advance reimbursement of legal fees and expenses from a corporation. Subsection (1) states:

> (1) A corporation may pay for or reimburse the reasonable expenses incurred by a director who is a party to a proceeding in advance of final disposition of the proceeding if:
> (a) the director furnishes the corporation a *written affirmation of his good faith belief that he has met the applicable standard of conduct* described in Section 16-10a-902;
> (b) the director furnishes to the corporation a *written undertaking*, executed personally or on his behalf, *to repay the advance if it is ultimately determined that he did not meet the standard of conduct*; and
> (c) a determination is made that the facts then known to those making the determination would not preclude indemnification under this part.

Utah Code Ann. § 16-10a-904(1) (2011) (emphasis added).

In order to comply with state law and become eligible for advance reimbursement of her legal fees and expenses, Flood provided ClearOne with the written affirmation and undertaking required by Section 16-10a-904(1) prior to the parties' negotiation of the Separation Agreement. *See* Letter to ClearOne Re: Request for Advanced Indemnification of Costs and Fees, Ex. 1 (Dkt. No. 79.) In the writing, Flood stated as follows:

> In connection with my request for indemnification and advance reimbursement of my reasonable costs and expenses, I state that as an officer and director of ClearOne, I have conducted myself in good faith at all times, and I reasonably believe as an officer and director of ClearOne, my conduct was in, and not opposed to,

7

> ClearOne's best interests. Furthermore, I personally promise to repay any advancement of any reasonable expenses if it is ultimately adjudged that I did not meet the requisite standard of conduct. My promise to repay the company is not conditioned or restricted in any manner, but constitutes a personal and unlimited general obligation.

*Id.* at 2.

Furthermore, the parties specifically contemplated the statutory standard of conduct when they negotiated and drafted the Separation Agreement. Paragraph 8 of the Separation Agreement, entitled "Indemnification" states:

> Subject to the limitations imposed by Utah Code Ann. § 16-10a-902 . . . ClearOne shall indemnify Flood for any liability and for all reasonable attorneys' fees and costs . . . .

Employment Separation Agreement, Ex. A, ¶ 8, (Dkt. No. 21.) The parties agreed that if Flood were to be found to have violated the statutory standard of conduct required for indemnification, the Separation Agreement itself would relieve ClearOne from any duty to reimburse Flood for her legal expenses.

The court finds that Flood failed to meet the standard of conduct required by law to make her eligible for indemnification and advance reimbursement of her legal fees and costs, and therefore ClearOne is prohibited by Utah state law from continuing to advance reimbursement for fees and costs to her. Additionally, the terms of the Separation Agreement relieve ClearOne from any contractual obligation to provide such indemnification or advances.

Flood has been convicted by a jury of nine different crimes related to her activities as a director of ClearOne. Utah Code Annotated § 16-10a-902(3) states that "[t]he termination of a proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent is not, of itself, determinative that the director did not meet the standard of conduct

described in this section." While the court cannot rely exclusively on the fact that Flood has been convicted of a crime to determine that she has failed to comply with the required standard of conduct for indemnification, the nature of the specific crimes Flood was convicted of lead to the inevitable conclusion that Flood had reasonable cause to believe that her conduct as a director was unlawful.

Flood was convicted of one count of conspiracy, three counts of making false statements to accountants, two counts of securities fraud, and three counts of perjury. *See* Jury Instructions, Ex. 1 (Dkt. No. 60.); Verdict, Ex. 2 (Dkt. No. 60.) For Flood to have been convicted of any of these crimes, a jury would have to find that she knowingly and willfully engaged in conduct that was illegal. Flood was convicted of all nine crimes for which she was charged. Given the findings of the jury in her criminal trial, no reasonable civil jury, applying a preponderance standard, could find that Flood did not have reasonable cause to believe that her conduct as a director was unlawful. She therefore failed to comply with the standard of conduct required for indemnification and advancement.

Because Utah state law prohibits ClearOne from indemnifying Flood and from advancing reimbursement of her legal fees and costs, and because the terms of the Separation Agreement relieve ClearOne of any duty to indemnify or distribute further advances to Flood, the questions raised by Flood in her initial motion for summary judgment are moot. The court vacates the previously issued summary judgment order on these grounds.

## II. RESTITUTION OF MONEY PAID TO FLOOD'S ATTORNEYS

ClearOne also asks the court to order the restitution of money paid on behalf of Flood to her attorneys, Snow Christensen & Martineau ("Snow Christensen"). ClearOne argues that because the preliminary injunction order requiring it to advance payment to Snow Christensen

has been vacated by the Tenth Circuit, it is now entitled to restitution from Snow Christensen of the money it previously paid in compliance with the order rather than being required to seek recovery of those funds from Flood. To support their argument, ClearOne points to principles laid out in the RESTATEMENT OF RESTITUTION and the RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT.

Section 18 of the recently adopted RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT describes general restitution principles in the context of a judgment that has subsequently been reversed or avoided as follows:

> A transfer or taking of property, in compliance with or otherwise in consequence of a judgment that is subsequently reversed or avoided, gives the disadvantaged party a claim in restitution as necessary to avoid unjust enrichment.

RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 18 (2011). *See also B&O R.R. Co. v. United States*, 279 U.S. 781 (1929) ("The right to recover what one has lost by the enforcement of a judgment subsequently reversed is well established."); *Arkadelphia Milling Co. v. St. Louis Southwestern Ry. Co.*, 249 U.S. 134 (1919) ("A party against whom an erroneous judgment or decree has been carried into effect is entitled, in the event of a reversal, to be restored by his adversary to that which he has lost thereby."); *Strong v. Laubach*, 443 F.3d 1297 (10th Cir. 2006) ("Should the judgment be reversed on appeal, a district court may, on motion or sua sponte, order the judgment creditor to restore the benefits obtained."); RESTATEMENT OF RESTITUTION § 74 (1937) ("A person who has conferred a benefit upon another in compliance with a judgment . . . is entitled to restitution if the judgment is reversed or set aside, unless restitution would be inequitable . . . .").

ClearOne argues that since its payment of Flood's attorneys' fees and expenses was compelled by a court order that was subsequently reversed, it is entitled to have the money returned by Snow Christensen.

Flood argues, to the contrary, that ClearOne cannot have a claim against Snow Christensen for restitution because Snow Christensen was not a party to the suit that gave rise to the erroneous preliminary injunction order. She argues that the case law cited by ClearOne establishes that restitution may be sought from a party to the case, but not from a non-party. Instead, Flood argues, the Restatements establish the principle that an attorney who receives payment for services as a result of a court order is not required to refund that payment in the event the judgment is later reversed.

Comment 'g' of Section 18 of the Third Restatement supports Flood's argument:

> If funds received in satisfaction of a judgment are paid by the judgment creditor to a bona fide payee, the latter holds such payments free of the judgment debtor's restitution claim on the subsequent reversal of the judgment. A bona fide payee from the judgment creditor might, of course, be a lawyer as well as a bank . . . .

RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 18 cmt. g (2011). *See also Mohamed v. Kerr*, 91 F.3d 1124, 1126 (8th Cir. 1996) ("[W]here a judgment creditor pays her attorney for legal services rendered from the judgment proceeds, the attorney is under no duty to repay the money if the judgment is subsequently reversed."); *Wall v. Johnson*, 80 So. 2d 362, 363 (Fla. 1955) ("The general rule is that even though the attorney retains as payment for his services . . . part or all of the proceeds of a judgment recovered by the client which is subsequently reversed, he is not obliged to make restitution to the judgment debtor provided he acted in good faith in prosecuting the action in which the judgment was recovered.");

RESTATEMENT OF RESTITUTION § 74 cmt. h (1937) ("An attorney or other agent of the judgment creditor who receives payment from the judgment . . . is not liable if the judgment was valid before reversal and if he had no knowledge of any fraud used in securing it. . . . [H]e is under no duty to repay money which he received on account of the judgment creditor and which he retains as payment for services or for a debt owed by the judgment creditor to him since he received the money as a bona fide purchaser.").

ClearOne argues that Snow Christensen cannot be considered a "bona fide payee" in this case because it was a direct beneficiary of the preliminary injunction order and had notice that ClearOne disputed the validity of the preliminary injunction order. ClearOne argues that because Snow Christensen is not a stranger to the suit and was the named beneficiary of the preliminary injunction order, that Snow Christensen is a "real party in interest" against whom ClearOne can seek restitution.

Comments to the First Restatement address claims for restitution against those who are not parties to the action that gave rise to a reversed judgment:

> *Restitution against other parties*. After the reversal of a judgment any person who, although not a party to the action, was a real party in interest and who received payment in whole or in part as the beneficial owner or as one of several owners, is under a duty to restore the amount received by him.

RESTATEMENT OF RESTITUTION § 74 cmt. k (1937). This comment is followed by two illustrations that give further insight into what is meant by "real party in interest". Illustration 27 refers to a trustee/beneficiary relationship, where the beneficiary is a "real party in interest," although not a party in the action, and Illustration 28 refers to an administrator/inheritor relationship, where the inheritor is a "real party in interest," although not a party to the suit. *See* RESTATEMENT OF RESTITUTION § 74 (1937). It is clear from the illustrations that when the

restatement speaks of a "real party in interest", it is referring to a situation where one party steps into the shoes of a non-party in order to represent the non-party's interests.

Flood, not Snow Christensen, is the "real party in interest" in this case. While Snow Christensen certainly has an interest in receiving payment from ClearOne as a result of the Separation Agreement, its interest is one that was created by the legal work performed on behalf of Flood. ClearOne seeks to recover under a theory of unjust enrichment. Snow Christensen, however, has not been unjustly enriched. It represented Flood as it was engaged to do. The obligation to pay Snow Christensen was Flood's. ClearOne's duty was to indemnify and advance funds on behalf of Flood. Similarly, Flood, not Snow Christensen, had the obligation to reimburse ClearOne should Flood ultimately not be entitled to indemnification. Flood is not representing Snow Christensen's interests in this case. She is representing her own interest in satisfying her monetary obligation to Snow Christensen for its provision of legal services to her. The fact that it has been determined that Flood is not ultimately entitled to indemnification by ClearOne does not alter the fact that Snow Christensen is entitled to its fees for having represented her.

ClearOne's argument that Snow Christensen cannot be a "bona fide payee" because it was on notice of ClearOne's objection to the preliminary injunction also fails. Section 67 of the Third Restatement describes the "bona fide payee" defense in more detail:

> (1) *A payee without notice takes payment free of a restitution claim* to which it would otherwise be subject, but only to the extent that
>   (a) the *payee accepts the funds in satisfaction or reduction of the payee's valid claim as creditor of the* payor or of another person;
>   . . . .
> (2) *A payee is entitled to the defense described in this section only if payment becomes final*, and the payee learns of the payment and its

> ostensible application, *before the payee has notice of the facts underlying the restitution claim the defense would cut off.* For purposes of this subsection, a payment becomes final when the payor is no longer entitled to countermand or recover it without the aid of legal process.

RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 67 (2011) (emphasis added). Section 69 of the Third Restatement states that a potential bona fide payee is disqualified if he has "notice of the *facts giving rise to the restitution claim* against which a defense is potentially interposed." RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT § 69 (2011) (emphasis added).

While Snow Christensen certainly had notice of ClearOne's objection to the preliminary injunction ordered by Judge Benson, it was not on notice that it, rather than Flood, would be responsible for restitution should Flood ultimately not be entitled to indemnification by ClearOne. Such a result would have the effect of making payment to Snow Christensen contingent upon the successful defense of Flood, which is against the rules of professional conduct in criminal cases. *See* UTAH RULES OF PROF'L CONDUCT R. 1.5(d)(2) (2011) ("A lawyer shall not enter into an arrangement for, charge or collect a contingent fee for representing a defendant in a criminal case."). *See also* RESTATEMENT (FIRST) OF CONTRACTS § 542(2) (1932) ("A bargain to conduct a criminal case . . . in consideration of a promise of a fee contingent on success is illegal."). Until the preliminary injunction order was reversed and vacated by the Tenth Circuit, ClearOne had no restitution claim against those funds. Snow Christensen could not possibly be on notice of a restitution claim that did not exist when it received payment for the services it rendered to Flood. Notice that Flood may ultimately have to repay ClearOne does not disqualify Snow Christensen as a bona fide payee.

ClearOne correctly points out that a minority of states have chosen to part from the Restatements' treatment of attorneys as bona fide payees who have received payment as a result of a judgment. *See Pond v. McNellis*, 845 N.E.2d 1043, 1060-61 (Ind. Ct. App. 2006) (holding that attorneys who were awarded fees directly were judgment creditors who were subject to a restitution order after reversal); *Berger v. Dixon & Snow, P.C.*, 868 P.2d 1149, 1154 (Colo. Ct. App. 1993) ("[A]n attorney who accepts fees with the knowledge that the award on which those fees depend could be later reversed, vacated, modified, or otherwise set aside may be ordered to restore the fees."); *In re Marriage of Mason*, 740 P.2d 356 (Wash. Ct. App. 1987) (affirming trial court's decision to order attorney to pay restitution after the reversal of a maintenance order pursuant to a divorce was reversed);[2] *Bruns v. Mattocks*, 70 A.2d 780 (N.J. Super. Ct. App. Div. 1950) ("What has been given or paid under the compulsion of a judgment the Court will restore when its judgment has been set aside and justice requires restitution. . . . Under appropriate circumstances the foregoing has been applied not only against the immediate parties but also against their attorneys who had been paid taxed costs and counsel fees.").

These cases represent a minority position. *See Mohamed v. Kerr*, 91 F.3d 1124, 1126 (8th Cir. 1996) ("[W]here a judgment creditor pays her attorney for legal services rendered from the judgment proceeds, the attorney is under no duty to repay the money if the judgment is subsequently reversed."); *Wall v. Johnson*, 80 So. 2d 362 (Fla. 1955) (denying restitution for payment of fees to attorney pursuant to a court order that was later reversed); *Cox v. Cox*, 780

---

[2] The Washington court claimed to distinguish this case from the First Restatement on grounds similar to those proposed by ClearOne, pointing out that the restatement does not directly address the scenario where an attorney is paid directly pursuant to a judgment and naming the attorney as a judgment creditor in his own right. The court also suggested that attorneys, in particular, should be aware of the possibility of appeal and reversal, and therefore cannot be purchasers in good faith when they are involved in actions where attorney fees are ordered. *In re Marriage of Mason*, 740 P.2d at 358.

N.E.2d 951 (Mass. App. Ct. 2002); *Abrahami v. UPC Constr. Co., Inc.*, 670 N.Y.S.2d 457 (N.Y. App. Div. 1998) (holding that attorney was liable for restitution of contingency fee awarded pursuant to a later vacated judgment, but not for restitution of other non-contingent fees); *Herkert v. Stauber*, 378 N.W.2d 704 (Wis. Ct. App. 1985). Furthermore, none of the minority cases involved fees for representation of a defendant in a criminal trial. Were the court to follow the minority position and hold that Snow Christensen is not a bona fide payee, the consequence would be to enforce an effective contingent fee arrangement for the provision of Flood's criminal defense, a result which is clearly against public policy in the state of Utah.

Snow Christensen is a bona fide payee of Flood, and as such, is not subject to a restitution claim from ClearOne. While the preliminary injunction order did require ClearOne to make payments directly to Snow Christensen and not Flood, this is not a rationale for finding Snow Christensen to be a "real party in interest" or for finding that Snow Christensen was on notice of a restitution claim against those payments. The preliminary injunction ordered ClearOne to pay Snow Christensen in satisfaction of its obligation to Flood. ClearOne owed the defense to Flood, and Flood's obligation to pay Snow Christensen was completely independent of any duty owed to her by ClearOne. Flood was the primary beneficiary of the preliminary injunction order and was the judgment creditor. It was her complaint that was filed, not Snow Christensen's. There is no substantive difference between an order that requires ClearOne to reimburse Flood for her legal expenses and an order that requires ClearOne to pay Snow Christensen directly as reimbursement for Flood's legal expenses. Certainly not a difference that would make Snow Christensen subject to a restitution claim that it would otherwise not be subject to.

This does not mean that ClearOne is completely without remedy. Under the Separation Agreement and Utah Law, ClearOne has the right to seek recovery of the funds it advanced from Flood. ClearOne's remedy is to seek restitution from Flood.

### III. RETURN OF MONEY HELD BY THE COURT IN ESCROW

Finally, ClearOne has also moved for the release of money currently held by the court in escrow. ClearOne argues that because the preliminary injunction order which authorized the court to hold these funds was vacated, the court no longer has legal authority to hold these funds in escrow. Flood opposes the motion, arguing that the funds should be released to Snow Christensen on the grounds that the only purpose for the escrow was to allow a source of funds should fees charged by Snow Christensen prove to be unreasonable. According to Flood, the vacatur of the preliminary injunction order eliminated the only justification for withholding the funds from Snow Christensen and therefore, they should be distributed to Snow Christensen.

The court agrees with ClearOne that there is no longer a legal justification for the clerk of the court to maintain the funds in escrow. The funds were placed in escrow to provide a means for ClearOne to fulfill its contractual duty to indemnify Flood for fees owed by her to Snow Christensen for her defense. Once it became established that ClearOne no longer had a duty to indemnify Flood or advance fees on her behalf, Flood no longer had a claim to any of the funds held in escrow. Absent any claim by Flood to these funds, they must be released to ClearOne.

Furthermore, the preliminary injunction order never awarded Snow Christensen anything more than a contingent claim on the funds held in escrow. Snow Christensen had only a legal right to payment of fees by Flood. The only expectation it could legitimately have had for the escrowed funds was an increased likelihood that Flood would be able to meet her obligation. The expectation, however, was always subject to Flood ultimately being entitled to

indemnification.  Thus, Snow Christensen was always on legal notice of the possibility that it would never receive the escrow funds at all.  The escrow funds are not the property of Snow Christensen, and never have been.  Such funds are therefore distinguishable from those that were paid by ClearOne directly to Snow Christensen, and the court does not impose inequitable harm on Snow Christensen by returning the escrow funds to ClearOne.

The funds held by the court must be returned to ClearOne, which had legal ownership of them subject only to a now failed duty of indemnification.  The court orders the money held in escrow to be returned to ClearOne.

## **CONCLUSION**

The court hereby DENIES ClearOne's motion for restitution of money paid to Flood's attorneys, GRANTS ClearOne's motion for return of money held by the court in escrow and ORDERS the Clerk of the Court to return those funds to ClearOne, and GRANTS ClearOne's motion to vacate the summary judgment order issued previously in this case and VACATES it as being moot.[3]

DATED this 20th day of January, 2012.

BY THE COURT:

_____
Clark Waddoups
United States District Judge

---

[3] Dkt. No. 75.